1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   ELODIA MARTINEZ ROJAS,            )    Civil No. 10CV2461 JLS (RBB)
                                       )
12              Plaintiff,             )    **ORDER (1) DENYING PLAINTIFF'S**
                                       )    **MOTION FOR SUMMARY**
13   v.                                )    **JUDGMENT; AND (2) GRANTING**
                                       )    **DEFENDANT'S CROSS-MOTION FOR**
14   MICHAEL J. ASTRUE, Commissioner of the )  **SUMMARY JUDGMENT**
     Social Security Administration,   )
15                                     )    (ECF Nos. 16, 17)
                Defendant.             )
16   _____ )

17

18                      **I.  PROCEDURAL BACKGROUND**

19          Plaintiff, Elodia Martinez Rojas, filed an application for disability insurance benefits and

20   supplemental security income benefits on August 7, 2008, and August 8, 2008, respectively, alleging

21   a disability onset of March 16, 2008.  (Admin. R. Attach. #5, 185-191, ECF No. 13; *see id.* Attach.

22   #2, 12.)  The Social Security Administration ("SSA") denied Plaintiff's claim initially on October

23   20, 2008, and upon reconsideration on December 26, 2008.  (*Id.* Attach. #4, 48-51, 54-58; *see id.*

24   Attach. #2, 12.)  On February 9, 2009, Rojas submitted a written request for an administrative

25   hearing.  (*Id.* Attach. #4, 60.)  A hearing was held before Administrative Law Judge ("ALJ")

26   Edward D. Steinman on April 26, 2010.  (*Id.* Attach. #2, 155-57.)  ALJ Steinman issued a written

27   decision on April 30, 2010, finding that Plaintiff was not disabled.  (*Id.* at 12-18.)  The denial of

28   benefits became final when the Appeals Council declined to review the decision.  (*Id.* at 1-3.)

On November 30, 2010, Rojas filed a Complaint for Review of Final Decision of the Commissioner of Social Security against Michael J. Astrue, Commissioner of Social Security [ECF No. 1]. There, the Plaintiff challenges the denial of her claim for disability insurance benefits and supplemental security income. (Compl. 2, ECF No. 1.) Defendant filed an Answer on March 28, 2011, and filed the Administrative Record the same day [ECF Nos. 12-13].

Rojas filed a Motion for Summary Judgment on April 28, 2011 [ECF No. 16]. On May 23, 2011, Astrue filed a Cross-Motion for Summary Judgment with a Memorandum of Points and Authorities [ECF No. 17] as well as a Response in Opposition to Plaintiff's Motion for Summary Judgment [ECF No. 18]. Plaintiff's Reply Memorandum was filed on June 7, 2011 [ECF No. 20].

The Motion for Summary Judgment and the Cross-Motion for Summary Judgment were originally referred to United States Magistrate Judge Ruben B. Brooks. This Court withdraws its referral and will rule on both Motions, which it finds suitable for resolution on the papers. *See* S.D. Cal. Civ. R. 7.1(d)(1). The Court has reviewed the Motion for Summary Judgment, Cross-Motion for Summary Judgment, and Reply. For the reasons set forth below, Plaintiff's Motion is **DENIED** and Defendant's Cross-Motion is **GRANTED**.

## II. MEDICAL EVIDENCE

Rojas is a fifty-two-year-old female with a ninth grade education, which she completed in Mexico; although she has permanent residency status, her primary language is Spanish and she has a limited ability to speak English. (Admin. R. Attach. #5, 196-97, ECF No. 13; *id.* Attach. #2, 37.) The Plaintiff alleges an on-the-job injury that caused lower back pain. (*Id.* Attach. #2, 15.) Prior to her claimed disability onset in March 2008, Rojas worked as an assembly line worker for a pharmaceutical company. (*Id.* at 30.)

**A.** **Examining Physicians**

On November 15, 2006, Plaintiff had an MRI of her lumbar spine, which revealed a posterior annular tear in the interverteral disc at L5-SI with an accompanying three-to-four millimeter posterior disc bulge. (*Id.* Attach. #7, 267-69.) There was no evidence of canal stenosis or neural foraminal narrowing. (*Id.*)

//

**1.     Dr. Chesler, physical medicine and rehabilitation**

On March 7, 2007, Bradley Chesler, M.D., examined Rojas to address her complaints of lumbar back pain with radiation, numbness, and tingling.  (*Id.* at 270.)  Dr. Chesler administered electromyography and nerve conduction tests on Plaintiff, which did not show any peripheral or proximal abnormalities.  (*Id.*)  The doctor examined Rojas again on August 6, 2007, for a follow up.  (*Id.* at 292; *see id.* Attach. #2, 16.)  The Plaintiff told the doctor that she had been using her medications as prescribed and felt they were helping; she stated that she may need to have them refilled.  (*Id.* Attach. #7, 292.)  Dr. Chesler noted that Rojas had moderate edema in the pelvic region as well as moderate tenderness in the SI joint and pelvic areas.  (*Id.*)

Plaintiff returned for a diagnostic ultrasound-guided sacroiliac joint injection on September 4, 2007, and again on September 18, 2007.  (*Id.* at 294-99.)  After conducting a physical examination, Dr. Chesler observed that Plaintiff had a full and painless range of motion of the thoracic and lumbar spine with normal stability, strength and tone.  (*Id.* at 298.)  Her gait was intact, her posture was normal, and she did not use any mobility aids.  (*Id.*)

The doctor examined Rojas on several occasions from 2007 through early 2009.  (*Id.* at 300-31, 352-56, 364-69.)  In general, the Plaintiff exhibited pain behaviors and her mobility and range of motion were generally reduced.  (*See generally id.*)  Although Rojas had moderate tenderness of the left SI joint, she also exhibited full and painless range of motion of the thoracic and lumbar spine.  (*See generally id.*)  As of the October 20, 2008 visit, Rojas was using a cane.  (*Id.* at 352-53, 355, 365, 368.)

The Plaintiff saw Dr. Chesler again on February 12, 2009, and informed the doctor told that Rojas had seen an orthopedic specialist who told her she did not need surgery; Plaintiff did not recall the orthopedist's name.  (*Id.* at 370-72.)  Rojas also asked Dr. Chesler for a medication refill and stated that the medications had helped her continue to be functional.  (*Id.*)  The doctor saw Plaintiff regularly for the subsequent months.  (*See id.* at 372- 87.)  On September 3, 2009, Dr. Chesler conducted a physical examination of Rojas that indicated only mild diffuse edema and mild movement restriction in all directions.  (*Id.* at 388-89.)

//

### 2.    Dr. Sabourin, consultative orthopedic evaluation

Thomas Sabourin, M.D., examined Rojas on October 7, 2008, to assess her complaints of pain in her lower back, neck, and right hip.  (*Id.* at 334-38.)  X-rays and MRIs revealed that she had a disc problem.  (*Id.* at 334.)  Dr. Sabourin noted that after Rojas received the two injections in 2007, her condition did not improve.  (*Id.*)  The Plaintiff was using a cane and indicated the she used it regularly.  (*Id.*)  Rojas described her pain as a burning pain radiating to the left leg and the feet; she told the doctor that the pain was worse with sitting, standing, walking, bending, or lifting.  (*Id.*)  Dr. Sabourin physically examined Plaintiff and observed that she had limped heavily when not using her cane, but she did not limp when she moved to the examination table without her cane.  (*Id.* at 335.)  In fact, the doctor indicated that Plaintiff was able to get on and off of the examination table without any assistance.  (*Id.*)  Although Rojas had her cane, she did not use it.  (*Id.*)  Dr. Sabourin also noted that Rojas declined toe and heel walking, stating that she was unable to do it.  (*Id.*)

Moreover, the doctor observed that despite Plaintiff's complaints of pain when testing ranges of motion of the cervical spine and lumbar spine, she moved around during the examination much more freely without apparent pain in the back.  (*Id.* at 336.)  Rojas was able to sit on the examination table with her leg straight out in front of her.  (*Id.*)  Dr. Sabourin opined that Plaintiff's extremity range of motion testing was grossly normal and painless with no tenderness or swelling.  (*Id.*)  The doctor's neurological testing revealed "giving way" in the muscle testing of the upper and lower extremities, a decreased sensation from the toe tips to the iliac crest, and a nonanatomic presentation of numbness.  (*Id.* at 337.)  The radiology testing was within normal limits.  (*Id.*)

Dr. Sabourin additionally indicated that Rojas had minimal lumbar spine problems and her complaints were disproportionate to the determinable condition.  (*Id.* at 338.)  During the examination, Rojas had negative straight leg raising and she refused spinal motion more than five degrees from the standing position.  (*Id.*)  The doctor concluded that there was no medical basis for Plaintiff's cane use.  (*Id.*)  He also determined that Rojas could lift and carry fifty pounds occasionally, twenty-five pounds frequently, stand and walk for six hours per day, and could sit for six hours per day, with frequent climbing, stooping, kneeling, and crouching.  (*Id.*)

//

4

### 3. Vista family health clinic

Rojas visited the Vista Family Clinic various times complaining of pain in her back and leg. (*Id.* at 280-85; 429-42.)  Physician's Assistant Jose Luis Suarez examined Plaintiff.  (*Id.*)

On March 26, 2010, Carlos Oliva, M.D., the primary doctor at the clinic, provided opinion evidence for the functional capacity assessment.  (*Id.* at 470-74; Attach. #2, 17, 39; *see id.* at 41 (indicating that Dr. Oliva was a treating physician).)  Dr. Oliva diagnosed Rojas with low back pain with radiculopathy and depression, and indicated that Rojas experiences constant pain and feels depressed.  (*Id.* Attach. #7, 470.)  As his objective medical evidence, the doctor referenced "tenderness to palpation" to Plaintiff's lower back, buttocks, and legs.  (*Id.*)  He opined that Rojas's impairments were reasonably consistent with the symptoms and functional limitations described in his evaluation.  (*Id.* at 471.)  Dr. Oliva stated that Plaintiff was incapable of even "low stress" jobs and that she could only sit for one hour at a time and stand for forty-five minutes at a time.  (*Id.*)  According to Dr. Oliva, Rojas could sit and stand or walk for less than two hours total in an eight-hour workday.  (*Id.* at 472.)  The doctor concluded that Plaintiff's functional capacity is less than sedentary.  (*See id.* Attach. #2, 17.)

### III.  THE ADMINISTRATIVE HEARING

A hearing was held before ALJ Steinman on April 26, 2010.  (*Id.* at 12; *see id.* at 23-43.)  Rojas appeared in person and was represented by counsel.  (*Id.*)  An impartial medical expert, Malcolm A. Brahms, was also present.  (*Id.*)  An impartial vocational expert, Alan E. Cummings, was present and testified.  (*Id.*)

### A.  Rojas's Testimony

The ALJ began the hearing by examining Plaintiff about her ability to work, her back pain, and her medications.  (*See generally id.* at 27-28.)  Rojas testified that she could not recall the name of her pain medication, but that it does not relieve the pain.  (*Id.* at 27.)  She stated that she uses a cane because her left leg gives out when she tries to walk.  (*Id.* at 28.)  Judge Steinman then asked her about her living arrangements and daily activities.  (*Id.* at 29.)  Rojas indicated that although she cleans the house for twenty minutes per day, she rests approximately four or five times a day for forty-five minutes each time because of the pain.  (*Id.* at 29-30; *see id.* at 35.)  Plaintiff testified that

1    she regularly drives her car to the store and to visit her granddaughter.  (*Id.* at 30-31.)  She also

2    testified that she goes to the park and to the beach with her husband.  (*Id.*)  Next, the ALJ noted that

3    Rojas had told Dr. Chesler that she was going to see an orthopedist, and asked Plaintiff if she in fact

4    did; Rojas stated that she never saw an orthopedist.  (*Id.* at 32.)  The Plaintiff further indicated that

5    she would have to get a job where she could rest every forty minutes.  (*Id.*)

6          Rojas's attorney then examined her about her prior job.  (*Id.* at 33.)  Plaintiff testified that

7    she worked at her job full-time for twelve years, and she tried to work for one year after the injury

8    before she could no loner continue due to pain.  (*Id.*)  She was in a sitting position all day at her

9    previous job and was not allowed to stand if she needed to.  (*Id.* at 34-35.)  Rojas said that she could

10   do a job now that allowed her to change positions every forty-five minutes throughout the day.  (*Id.*

11   at 35.)  She also testified that the two spinal injections did not provide any relief and that no doctor

12   has recommended surgery.  (*Id.* at 33.)

13         On reexamination, the ALJ asked Rojas about her prior employment as an assembly worker

14   for a pharmaceutical company.  (*Id.* at 36.)  At that job, Plaintiff sat for eight hours per day and

15   assembled pregnancy test packages that weighed less than ten pounds; the vocational expert testified

16   that this amounts to sedentary-level work activity.  (*Id.* at 36-37.)

17   **B.    Vocational Expert Testimony**

18         The ALJ presented the vocational expert, Alan E. Cummings, with five hypothetical

19   scenarios to assess the Plaintiff's potential for returning to work.  (*See id.* at 37-40.)

20         For the first hypothetical, Judge Steinman presented Cummings with the DDS analysis,

21   which determined that Plaintiff's impairment was nonsevere and that she was amplifying her

22   symptoms.  (*Id.* at 37.)  Cummings testified that based on this evaluation, Rojas could return to her

23   prior work as an assembly worker.  (*Id.*)

24         The ALJ questioned the vocational expert on the second hypothetical dealing with the

25   orthopedic examination conducted in October 2008, which showed complaints of back, neck, and

26   hip pain, and indicated that the presentation was disproportionate to the findings.  (*Id.* at 37-38.)

27   Cummings maintained that Rojas could return to work as an assembly worker under this

28   hypothetical.  (*Id.* at 38.)

1    The third hypothetical consisted of Dr. Chesler's assessment that Rojas could not lift more

2    than fifteen pounds and indicated partial temporary disability. (*Id.*) Again, the vocational expert

3    testified that Plaintiff could return to her prior work. (*Id.*)

4    Fourth, ALJ Steinman asked Cummings to consider a scenario in which Rojas could perform

5    a full range of light work, sit six of eight hours per day, and stand and walk two hours per day. (*Id.*)

6    The vocational expert opined that those limitations would allow Plaintiff to return to her past work

7    as an assembly worker. (*Id.*)

8    The fifth hypothetical presented Cummings with Rojas's assessment of her limitations. (*Id.*)

9    The Plaintiff testified that she would need extensive rest periods to be able to work forty-five

10   minutes at a time, three or four times per day. (*Id.*) Cummings explained that under this

11   hypothetical, there would not be any full-time work that Rojas could perform. (*Id.* at 39.)

### IV.  THE ALJ'S DECISION

13   After considering the record, Judge Steinman concluded that Plaintiff suffered from a severe

14   impairment of low back pain, but her depression did not constitute a severe impairment. (*Id.* at 14-

15   15.)

16   Judge Steinman also made the following relevant findings:

17   1.  The claimant meets the insured status requirements of the Social Security Act
     through December 31, 2013.

19   2.  The claimant has not engaged in substantial gainful activity since March 16, 2008,
     the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
     . . . .

21   3.  The claimant has the following severe impairment: low back pain (20 CFR
     404.1520(c) and 416.920(c)).
     . . . .

23   4.  The claimant does not have an impairment or combination of impairments that
     meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart
     P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 404.920(d), 416.925 and
24   416.926).
     . . . .

26   5.  After careful consideration of the entire record, the undersigned finds that the
     claimant has the residual functional capacity to perform light work activity,
     specifically, the claimant can lift and carry 20 pounds occasionally, 10 pounds
27   frequently, sit for six hours in an eight hour workday, and stand/walk for two hours in
     an eight hour workday, with no other limitations.

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

. . . .

 . . . [C]laimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant alleges chronic back pain and the need for a cane to ambulate. The claimant testified that she is unable to work due to the constant back pain, uncontrolled by medication. She testified that she takes [her] medications as prescribed, but that they do not relieve her pain sufficiently. However, the claimant told Dr. Chesler that she had been using her medications as prescribed and that they had been helping her. She stated [s]he is unable to walk normally, and her left leg gives out. The claimant tries to clean house for 20 minutes at a time, and she is able to drive a car to the store on a daily basis, shop and visit her granddaughter. The claimant testified she never saw an orthopaedist. Even giving the claimant the benefit of the doubt regarding back pathology leading to less than light functional capacity, she indicated no problems in the use of upper extremities. Throughout the records provided by Dr. Chesler, the claimant repeatedly referenced having seen a neurologist, an orthopaedist, and other specialists, but never provided any clinical records or other documentation regarding the findings of these physicians, not to Dr. Chesler, or to the Commissioner, to support her allegations of back pain and radiating leg pain . . . . Moreover, the claimant's exaggerated symptomology exhibited during the consultative evaluation is inconsistent with the claimant's level of daily functioning. Consequently, the undersigned finds that the claimant's allegations of disabling pain and limitation are inconsistent with the evidence of record, and are, therefore, not fully credible.

As for the opinion evidence, the functional capacity assessment provided by Carlos Oliva, M.D., dated March 26, 2010, provides no indication of any frequency or length of contact with the claimant, and no supporting documentation, clinical signs or laboratory findings to support his opinions. Dr. Oliva provides diagnoses of low back pain with radiculopathy and depression and states that the claimant is in constant pain, and is feeling depressed, but provides as his only objective medical evidence "tenderness to palpation." Dr. Oliva opines a less than sedentary functional capacity which is wholly inconsistent with the evidence of record. Moreover, Dr. Oliva is not an orthopaedic specialist, but only a generally practitioner. The undersigned finds that Dr. Oliva appears to be attempting to actively assist the claimant to obtain benefits rather than provide accurate functional capacity assessment resulting from ongoing treatment. The undersigned gives the opinions of Dr. Oliva little weight, and gives great weight to the opinions of the consultative examiner, Dr. Sabourin, who is a board certified orthopaedic specialist and who is more familiar with the Commissioner's regulations for evaluating disability.

In sum, the above residual functional capacity assessment is supported by the opinions of the consultative examiner.

6. The claimant is capable of performing past relevant work as an assembler, unskilled sedentary level work activity. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

The vocational expert testified that the claimant has past relevant work as an assembler . . ., which is classified . . . as unskilled, sedentary level work activity.

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

7.  The claimant has not been under a disability, as defined in the Social Security Act, from March 16, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

. . . .

(*Id.* at 14-15, 17-18.)

Based on all of the above, the ALJ concluded that Rojas was not disabled and not entitled to supplemental security income.  (*Id.* at 18.)

## V.  STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant must show two things: (1) he or she suffers from a medically determinable impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A).  An applicant must meet both requirements to be classified as "disabled." *Id.*

Sections 205(g) and 1631(c)(3) of the Social Security Act allow applicants whose claims have been denied by the Social Security Administration to seek judicial review of the Commissioner's final agency decision.  42 U.S.C.A. §§ 405(g), 1383(c)(3).  A district court should affirm the decision unless "it is based upon legal error or is not supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion[,]" considering the record as a whole.  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It means "'more than a mere scintilla but less than a preponderance'" of the evidence.  *Bayliss*, 427 F.3d at 1214 n.1 (quoting *Tidwell*, 161 F.3d at 601).  "'[T]he court must consider both evidence that

supports and the evidence that detracts from the ALJ's conclusion . . . .'" *Frost v. Barnhart*, 314 F.3d 359, 366-67 (9th Cir. 2002) (quoting *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

To determine whether a claimant is "disabled," the Social Security regulations use a five-step process outlined in 20 C.F.R. § 404.1520.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of SSA.*, 223 F.3d 968, 974 (9th Cir. 2000)).  Although the ALJ must assist the applicant in developing a record, the applicant bears the burden of proof during the first four steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999).  If the fifth step is reached, however, the burden shifts to the Commissioner.  *Id.* at 1098.  The steps for evaluating a claim are as follows:

> **Step 1.**  Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "*not disabled*" within the meaning of the Social Security Act and is not entitled to disability insurance benefits.  If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.

> **Step 2.**  Is the claimant's impairment severe?  If not, then the claimant is "*not disabled*" and is not entitled to disability insurance benefits.  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.

> **Step 3.**  Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If so, the claimant is "*disabled*" and therefore entitled to disability insurance benefits.  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.

> **Step 4.**  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is "*not disabled*" and is not entitled to disability insurance benefits.  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.

> **Step 5.**  Is the claimant able to do any other work?  If not, then the claimant is "*disabled*" and therefore entitled to disability insurance benefits.  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.  There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do:  (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "*not disabled*" and therefore not entitled to disability insurance benefits.  If the Commissioner cannot meet this burden, then the claimant is "*disabled*" and therefore entitled to disability benefits.

1   *Id.* at 1098-99 (footnotes and citations omitted); *see also Bustamante v. Massanari*, 262 F.3d 949,

2   954 (9th Cir. 2001) (giving an abbreviated version of the five steps).

3        Section 405(g) permits the court to enter a judgment affirming, modifying, or reversing the

4   Commissioner's decision.  42 U.S.C.A. § 405(g).  The matter may also be remanded to the Social

5   Security Administration for further proceedings.  *Id.*  After a case is remanded and an additional

6   hearing is held, the Commissioner may modify or affirm the original findings of fact or the decision.

7   *Id.*

8        "If the evidence can reasonably support either affirming or reversing the Secretary's

9   conclusion, the court may not substitute its judgment for that of the Secretary."  *Flaten v. Sec'y*

10  *Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The court must uphold the denial of

11  benefits if the evidence is susceptible to more than one rational interpretation, one of which supports

12  the ALJ's decision.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

13  **VI.  DISCUSSION**

14  **A.**    **Plaintiff's Argument**

15       Rojas asserts in her Motion for Summary Judgment that the ALJ's credibility analysis lacks

16  the support of substantial evidence.  (Mot. Summ. J. 3, ECF No. 16.)  Plaintiff contends that the ALJ

17  did not set forth legally sufficient reasons for rejecting her subjective medical complaints.  (*Id.* at 4.)

18  The medical evidence, in fact, establishes that Plaintiff has medically determinable physical and

19  mental impairments that would produce functional limitations.  (*Id.*)  Rojas asserts that although the

20  ALJ's stated reasons for making his credibility finding were specific, they are not legitimate.  (*Id.* at

21  5.)

22       Further, Rojas alleges that she submitted medical evidence that "wholly associates her

23  subjective symptoms with a clinically demonstrated impairment."  (*Id.*)  Plaintiff submits that the

24  medical records "reveal limited mobility, tenderness, decreased strength in the left lower extremity,

25  decreased reflexes in the right Achilles and guarded movements in the low back."  (*Id.*)  The

26  November 15, 2006 MRI reveals that Plaintiff had a "posterior annular tear in the intervertebral

27  disc" with a three-to-four millimeter posterior disc bulge; she received ultrasound-guided joint

28  injections and was prescribed pain medication.  (*Id.*)

1    The Plaintiff alleges that the ALJ discounted her testimony "essentially" because it was not

2    supported by objective evidence—which, by itself, is improper—despite the "abundant" objective

3    findings to support Rojas's complaints.  (*Id.* at 5-6.)  Further, Plaintiff asserts that although the ALJ

4    gave several reasons for his credibility determination, "the gist" of each reason was that Rojas's

5    complaints were not supported by the objective evidence in the record, which is improper.  (Reply 3,

6    ECF No. 20.)

7    Plaintiff requests that the Court credit her testimony as true and reverse the ALJ's decision

8    and award benefits.  (Mot. Summ. J. 6-7, ECF No. 16.)  Alternatively, the Court should remand the

9    matter to allow proper consideration of Rojas's subjective symptoms and to elicit testimony from a

10   vocational expert regarding her nonexertional impairments.  (*Id.* at 7.)

11   **B.    Defendant's Argument**

12   In his Cross-Motion for Summary Judgment, the Commisioner contends that the only issue

13   challenged by Plaintiff is the ALJ's decision to reject Rojsa's testimony for conflicting with

14   objective evidence.  (Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 2, ECF No. 17.)  Yet,

15   Defendant emphasizes that the legally relevant question is whether substantial evidence supports the

16   ALJ's credibility determination.  (*Id.*)  The ALJ gave numerous valid reasons, in addition to finding

17   that Plaintiff's testimony conflicted with objective evidence, that substantially support a finding that

18   Rojas was not fully credible.  (*Id.*)

19   Defendant maintains that the ALJ's decision was supported by the following reasons:

20   (1) Rojas's lack of treatment and failure to provide evidence of disability; (2) Rojas's conservative

21   treatment plan; (3) Rojas's own admissions; (4) Rojas's activities of daily living; (5) evidence of

22   exaggeration; and (6) inconsistencies with the record.  (*Id.*)  Defendant asserts that Rojas largely

23   ignores these bases for the ALJ's credibility determination and instead focuses solely on the ALJ's

24   reliance on objective medical evidence.  (*Id.*)  Even so, according to the Defendant, the objective

25   medical evidence in fact supports the credibility determination.  (*Id.* at 8.)   The 2006 scan of

26   Plaintiff's lumbar spine shows that she had a posterior annular tear, which is alone not enough to

27   establish disability; both Dr. Sabourin and the ALJ analyzed this report before concluding that

28   Plaintiff was not disabled.  (*Id.* at 9.)  Astrue contends that the doctor conducted his own imaging

1  analysis before finding that Rojas's lumbar spine was within normal limits and that she could

2  perform medium work.  (*Id.*)

3       Even if Judge Steinman erred on one of his findings, the Commissioner contends, the

4  remaining reasons the ALJ gave to discredit Rojas's testimony constitute substantial evidence.  (*Id.*

5  at 2.)  Therefore, the Defendant argues that the decision should be upheld.  (*Id.*)

6  **C.   Judge Steinman's Credibility Determination**

7       The ALJ concluded that Rojas has the residual functional capacity to perform light work

8  activity.  (Admin. R. Attach. #2, 15, ECF No. 13.)  In making this finding, Judge Steinman

9  considered Plaintiff's symptoms as well as opinion evidence.  (*Id.*)

10      **1.   Plaintiff's symptoms**

11      As to Rojas's symptoms, the ALJ followed a two-step process.  First, he determined whether

12  Plaintiff had an impairment that could be shown by medically acceptable diagnostic techniques and

13  could reasonably produce the symptoms.  (*Id.*)  Second, the ALJ assessed the intensity, persistence,

14  and limiting effects of Rojas's symptoms to determine the extent to which they limit her ability to

15  function.  (*Id.*)  When Rojas's statements were not substantiated by objective medical evidence, the

16  ALJ made a finding on the credibility of the statements based on a consideration of the record as a

17  whole.  (*Id.*)

18      As to both inquiries, the ALJ referred to the November 15, 2006, MRI studies showing that

19  Rojas had a posterior annular tear in the intervertebrtal disc with an accompanying posterior disc

20  bulge.  (*Id.*)  The ALJ also noted that in March 2007 nerve conduction studies addressed Rojas's

21  complaints of lumbar back pain; an electromyographic investigation showed no focal abnormality.

22  (*Id.* at 16.)  Dr. Chesler's August 2007 examination was considered, during which Rojas told the

23  doctor that her medications had helped.  (*Id.*)  The ALJ noted the examinations by Dr. Chesler in

24  September 2008, where Plaintiff exhibited a full, painless range of motion of the thoracic and

25  lumbar spine with normal stability, strength, and tone.  (*Id.*)

26      Judge Steinman also contemplated Dr. Sabourin's October 7, 2008, examination, during

27  which the doctor observed that despite Plaintiff's heavy limp without the use of a cane, she moved

28  to the examination table without any limp and was able to get on and off the table by herself. (*Id.*)

1    The ALJ considered that Rojas declined toe and heel walking.  (*Id.*)  He also noted Dr. Sabourin's

2    claim that Plaintiff complained of pain with every motion, yet moved around freely without apparent

3    pain during the examination, and was able to sit on the examination table with her leg straight out.

4    (*Id.*)  Plaintiff's extremity range of motion testing was grossly normal and painless, neurological

5    testing revealed "giving way" in muscle testing, and radiology testing was within normal limits.

6    (*Id.*)  Judge Steinman noted Dr. Sabourin's opinion that Rojas had minimal lumbar spine problems

7    and that her complaints were disproportionate to the condition.  (*Id.*)  The doctor also concluded that

8    there was no medical basis for Plaintiff's cane use.  (*Id.*)

9         Further, the ALJ contemplated the February 2009 examination by Dr. Chesler.  (*Id.*)  At that

10   examination, Rojas told the doctor that she was seen by an orthopedic specialist, but that she could

11   not recall the specialist's name.  (*Id.*)  The specialist had apparently informed Plaintiff that she did

12   not need surgery.  (*Id.*)  Plaintiff also told Dr. Chesler that the medications had been helping her

13   function.  (*Id.*)  Dr. Chesler's September 2009 physical examination revealed only mild diffuse

14   edema and mild movement restriction.   (*Id.*)

15        After considering all of this evidence regarding Plaintiff's symptoms, the ALJ concluded that

16   Rojas's medically determinable impairment could reasonably be expected to cause the alleged

17   symptoms.  (*Id.* at 17.)  Even so, the ALJ determined that Plaintiff's statements regarding the

18   intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were

19   inconsistent with the residual functional capacity assessment.  (*Id.*)  Judge Steinman noted that on

20   the one hand, Rojas testified that she needed a cane to ambulate and that the medication did not

21   relieve her constant back pain; on the other hand, she told Dr. Chesler that her medications had been

22   helping her.  (*Id.*)   Similarly, the ALJ noted the discrepancies between Plaintiff's testimony

23   disclosing that she never saw an orthopedist, and her statements to Dr. Chesler that she saw an

24   orthopedist, a neurologist, and other specialists.  (*Id.*)  And moreover, the ALJ recognized that

25   Plaintiff never provided documentation from the specialists to Dr. Chesler or to the Commissioner.

26   (*Id.*)  In sum, the ALJ found that Rojas's exaggerated symptomology was inconsistent with her daily

27   functioning and that Plaintiff's allegations of disabling pain were inconsistent with the evidence and

28   were therefore not fully credible.  (*Id.*)

14

1

### 2.      Opinion Evidence

2      The ALJ considered Dr. Oliva's functional capacity assessment dated March 26, 2010.  (*Id.*)

3  Judge Steinman noted that the assessment did not indicate the doctor's frequency or length of

4  contact with Rojas, and lacked supporting documentation, clinical signs, or laboratory findings.

5  (*Id.*)  Although Dr. Oliva opined that Plaintiff was in constant pain and suffered from low back pain

6  with radiculopathy and depression, the only objective medical evidence the doctor provided was

7  "tenderness to palpation."  (*Id.*)   Further, according to Judge Steinman, Dr. Oliva's assessment that

8  Rojas has a less than sedentary functional capacity was inconsistent with the record. (*Id.*)  The ALJ

9  acknowledged that the doctor is a general practitioner, not an orthopedist specialist. (*Id.*)

10  Ultimately, the ALJ gave Dr. Oliva's opinions little weight and stated that the doctor seemed to be

11  attempting to assist Rojas in obtaining benefits as opposed to providing an accurate assessment.

12  (*Id.*)   In contrast, the ALJ gave great weight to the opinions of the consulative orthopedic specialist,

13  Dr. Sabourin, which support the residual functional capacity assessment outlined by the ALJ.  (*Id.*)

14  **B.      Whether Substantial Evidence Supports the ALJ's Credibility Determination**

15      "In order for the ALJ to find [claimaint's] testimony unreliable, the ALJ must make 'a

16  credibility determination with findings sufficiently specific to permit the court to conclude that the

17  ALJ did not arbitrarily discredit claimant's testimony.'"  *Turner v. Comm'r of SSA*, 613 F.3d 1217,

18  1224 (9th Cir. 2010) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).  In

19  evaluating the credibility of a plaintiff's testimony regarding subjective pain, the adjudicator must

20  engage in a two-step analysis.  *Vasquez v. Astrue*, 575 F.3d 586, 591 (9th Cir. 2009) (citing

21  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)); *see also Batson v. Comm'r of SSA*,

22  359 F.3d 1190, 1196 (9th Cir. 2004).  "'First, the ALJ must determine whether the claimant has

23  presented objective medical evidence of an underlying impairment which could reasonably be

24  expected to produce the pain or other symptoms alleged.'"  *Vasquez*, 575 F.3d at 591 (quoting

25  *Lingenfelter*, 504 F.3d at 1036).  Second, if the claimant meets the first step and there is no evidence

26  of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms if

27  he gives "'specific, clear and convincing reasons'" for the rejection.  *Id.* (quoting *Lingenfelter*, 504

28  F.3d at 1036); *see also Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).

1    Here, Judge Steinman determined that Rojas's impairment "could reasonably be expected to

2  cause the alleged symptoms . . . ."  (Admin. R. Attach. #2, 17, ECF No. 13.)  Neither the Plaintiff

3  nor the Defendant challenge this determination.  The first prong of the ALJ's inquiry regarding the

4  credibility of Plaintiff's complains is satisfied.  *See Vasquez*, 572 F.3d at 591.  Therefore, the issue is

5  whether Judge Steinman provided clear reasons for the adverse credibility finding.

6    The ALJ's reasons for rejecting a claimant's testimony must be "clear and convincing."

7  *Reddick v. Charter*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834

8  (9th Cir.1996)).  To support a lack of credibility finding, the ALJ must point to specific facts in the

9  record that demonstrate that the plaintiff is in less pain than she claims.  *Vasquez*, 572 F.3d at 592

10 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).  The ALJ must provide specific

11 findings "stat[ing] which pain testimony is not credible and what evidence suggests the complaints

12 are not credible."  *Dodrill*, 12 F.3d at 918.  A reviewing court should not be forced to speculate as to

13 the grounds for an ALJ's rejection of a plaintiff's allegations of disabling pain.  *Bunnell v. Sullivan*,

14 947 F.2d 341, 346 (9th Cir. 1991) (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see*

15 *also Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (explaining that the ALJ must build an

16 accurate and logical connection between the evidence and the decision).

17    In general, questions of credibility are left to the ALJ to resolve.  *Sample v. Schweiker*, 694

18 F.2d 639, 642 (9th Cir. 1982).  Courts should not "second-guess" credibility determinations.  *Allen*

19 *v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984).  If the evidence is conflicting and could be rationally

20 interpreted more than one way, the court "must uphold the decision of the ALJ."  *Id.* at 579.

21    Social Security Ruling 96-7p provides the relevant standard:

22        4. In determining the credibility of the individual's statements, the adjudicator
         must consider the entire case record, including the objective medical evidence, the
23        individual's own statements about symptoms, statements and other information
         provided by treating or examining physicians or psychologists and other persons
24        about the symptoms and how they affect the individual, and any other relevant
         evidence in the case record. An individual's statements about the intensity and
25        persistence of pain or other symptoms or about the effect the symptoms have on his
         or her ability to work may not be disregarded solely because they are not
26        substantiated by objective medical evidence.

27        5. It is not sufficient for the adjudicator to make a single, conclusory
         statement that 'the individual's allegations have been considered' or that 'the
28        allegations are (or are not) credible.' It is also not enough for the adjudicator simply
         to recite the factors that are described in the regulations for evaluating symptoms.

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Soc. Sec. Ruling 96-7p, 1996 SSR LEXIS 4, at *2-4 (July 2, 1996).

The Ninth Circuit has articulated the grounds on which an ALJ may properly decide to discredit a claimant's testimony:

> In weighing a claimant's credibility, the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.

*Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted).  Where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *see also Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1163 (9th Cir. 2008).

Here, because there was medical evidence of underlying impairments consistent with Rojas's complaints and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing.  *Regennitter v. Comm'r of SSA*, 166 F.3d 1294, 1297 (9th Cir. 1999).  Contrary to Plaintiff's argument, the ALJ did not rely solely on the minimal objective evidence in discrediting Rojas's testimony.  As discussed below, Judge Steinman made additional specific findings to support his credibility determination, such as Rojas's inconsistent statements, her daily activities, and exaggerated statements.

### 1.    Inconsistent statements

In assessing a claimant's credibility, an adjudicator may consider ordinary methods of credibility determination, such as the claimant's prior inconsistent statements about her symptoms.  *Turner,* 613 F.3d at 1224 n.3 (quoting *Smolen*, 80 F.3d at 1284).  A claimant's prior statements that are inconsistent with the alleged pain may be properly taken into account in determining whether the claim of disabling pain should be believed.  *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989).  So long as the ALJ makes specific findings that are supported by the record, the ALJ may discredit the claimant's allegations based on inconsistencies in the testimony.  *Bunnell*, 947 F.2d at 346.

17

1       In his Cross-Motion for Summary Judgment, the Defendant asserts that the ALJ properly

2  considered Plaintiff's admissions of well-being, particularly when the ALJ noted Plaintiff's

3  indication that she had no problems in the use of upper extremities and that her medications had

4  been helping her.  (Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 5, ECF No. 17.)  Defendant

5  contends the ALJ also properly noted Rojas's statements that were internally inconsistent.  (*Id.*)  For

6  instance, Defendant argues, Judge Steinman considered that Rojas testified that she never saw an

7  orthopedist, yet she told her doctor that she saw an orthopedist who opined that surgery was

8  inappropriate.  (*Id.* at 5-6.)  Likewise, Defendant argues that the ALJ properly acknowledged that

9  Plaintiff testified that her medication did not help, although she told her doctor the medications did

10 help her.  (*Id.* at 6.)  Rojas does not address this argument in her Reply.

11      The ALJ made specific findings concerning Rojas's inconsistent statements that are

12 supported by the record.  *See Bunnell*, 947 F.2d at 346.  Judge Steinman stated that Plaintiff testified

13 she cannot work because of back pain that is uncontrolled by medication.  (Admin. R. Attach. #2,

14 17, ECF No. 13.)  The ALJ acknowledged that although Plaintiff testified that the medications do

15 not sufficiently relieve her pain, she told Dr. Chesler that the medications did help her.  (*Id.*)

16 Similarly, the ALJ described that despite Rojas's repeated assertions that she had seen an

17 orthopedist, nuerologist, and other specialists, she never provided clinical records or other

18 documentation from these physicians to Dr. Chesler or to the Commissioner.  (*Id.*)  Judge Steinman

19 properly considered internal contradictions in Rojas's testimony as well as evidence indicating that

20 Plaintiff was not being candid.  *Light*, 119 F.3d at 792 (noting that an ALJ may rely on a claimant's

21 internal contradictions when weighing credibility); *see also Fair*, 885 F.2d 604 n.5 (permitting

22 adjudicators to judge a claimant's credibility based on evidence that the claimant is not being

23 candid).  These are specific and clear examples of inconsistencies in Rojas's testimony that could

24 weigh against her credibility.  The reasoning is supported by substantial evidence.  *See Flaten.*, 44

25 F.3d at1457 (discussing that if the evidence can reasonably support affirming or reversing the ALJ's

26 conclusion, the court may not substitute its judgment for that of the ALJ); *Burch*, 400 F.3d at 679

27 (finding that the court must uphold the denial of benefits when the evidence may be subject to more

28 than one rational interpretation).

As to Rojas's admissions of well-being, the ALJ referred to Plaintiff's statement that her medications had been helping her, but he did not do so in the context of establishing admissions of well-being; rather, he did so to illustrate instances in which her testimony was inconsistent. (*See* Admin. R. Attach. #2, 17, ECF No. 13 (citing to events in the record revealing inconsistencies between Rojas's testimony or her testimony and conduct).)  The Court's inquiry is limited to whether the reasons articulated by the ALJ in making his credibility determination were clear and convincing and supported by the record. *Vasquez*, 575 F.3d at 591.  Judge Steinman did not state that he was relying on Rojas's admissions of well-being as a basis for the adverse credibility finding, and the Court will not consider the evidence in this context. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (clarifying that the "fundamental rule of administrative law" is that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency"); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (constraining its review to the reasons asserted by the ALJ).

### 2.     Exaggerated symptomology

To determine whether the claimant's testimony is credible, an ALJ may consider typical techniques of credibility assessment, such as testimony by the claimant "that appears less than candid." *Turner,* 613 F.3d at 1224 n.3 (internal quotation marks omitted).  Specifically, the ALJ may find that a claimant is not credible if she has made exaggerated statements about the intensity and persistence of her physical impairments. *Id.* at 1225; *Tonapetyan,* 242 F.3d at 1148 (indicating that the ALJ properly considered plaintiff's tendency to exaggerate); *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984) ("The ALJ can disregard a claimant's self-serving statements if they are unsupported by objective findings.")

In his Cross-Motion for Summary Judgment, Defendant argues that the ALJ's consideration of Rojas's exaggerated statements was proper.  (Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 7, ECF No. 17.)  Judge Steinman found that Rojas had exaggerated her "symptomology" based in part on Dr. Sabourin's October 7, 2008, orthopedic examination.  (*Id.*)  Defendant asserts that Dr. Sabourin observed that although Plaintiff limped to favor her left leg, she was later able to move to

19

the examination table without a limp or exhibition of pain.  (*Id.*)  Likewise, the doctor noted that Rojas complained of pain when trying to move back during the lumbar spine exam, but she moved around without apparent pain after the formal exam.  (*Id.*)  According to the Commissioner, Dr. Sabourin found that Rojas's limp was disproportionate to the "determinable condition" and that Plaintiff did not need a cane.  (*Id.*)  The Plaintiff does not address this argument in her Reply to Defendant's Cross-Motion for Summary Judgment.

Here, in making his credibility determination, Judge Steinman found that Rojas displayed "exaggerated symptomology" during the consultative evaluation.  (Admin. R. Attach. #2, 17, ECF No. 13.)  During the October 7, 2008 evaluation referenced by Judge Steinman, Dr. Sabourin noted that although Rojas limped heavily without her cane, she was able to move to the examination table without limping; she had her cane but did not use it.  (*Id.* Attach. #7, 335.)  After his evaluation, Dr. Sabourin concluded that there was no medical basis for Plaintiff's cane use and that her complaints were disproportionate to the determinable condition.  (*Id.* at 338.)  The ALJ gave great weight to the observations noted by Dr. Sabourin because, as a board certified orthopedic specialist, Dr. Sabourin is familiar with the regulations for evaluating disability.  (*Id.* Attach. #2, 17.)

The ALJ properly considered the exaggerated symptomology Rojas exhibited during the October 7, 2008, evaluation with Dr. Sabourin.  *Turner,* 613 F.3d at 1225; *Tonapetyan,* 242 F.3d at 1148.  Judge Steinman stated clear and convincing reasons for discrediting Rojas's testimony on this ground by citing specific examples of this evidence.  Moreover, the record supports the finding that Plaintiff exaggerated her statements.  She stated she needed to use a cane regularly even though an orthopedist opined there was no medical basis for any cane use.  Rojas limped heavily in some instances but walked without a limp or a cane at other times.  This evidence is sufficient to support Judge Steinman's conclusion that Plaintiff was exaggerating, and therefore, not fully credible.

### 3.      Activities of daily living

Indeed, a claimant need not be "utterly incapacitated" to obtain disability benefits.  *Fair*, 885 F.2d at 603.  Nonetheless, the ALJ may consider the claimant's daily activities and may reject excess pain allegations where the activities contradict the claimant's other testimony, or where the

1   activities meet the threshold for transferable work skills.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

2   2007).

3         Defendant argues in his Cross-Motion that Judge Steinman properly considered Rojas's daily

4   living activities in his credibility analysis.  (Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 6, ECF

5   No. 17.)  Plaintiff testified during the hearing that she engaged in various activities, such as going to

6   the beach and park, driving to the store and to visit her granddaughter, and cleaning her house for

7   twenty minutes at a time.  (*Id.*)  Defendant maintains that the ALJ correctly took these activities into

8   account before concluding that Rojas's exaggerated symptomology was inconsistent with her daily

9   living activities.  (*Id.*)  The Plaintiff argues in reply that by taking these activities into account, the

10  ALJ improperly rejected her subjective complaints.  (Reply 4, ECF No. 20.)  According to Rojas,

11  Judge Steinman did not adequately explain how these activities translate into her ability to perform

12  work on a full-time basis.  (*Id.*)

13        In his decision, the ALJ rendered an adverse credibility finding by considering, in part,

14  Plaintiff's daily activities.  (*See* Admin. R. Attach. #2, 17, ECF No. 13.)  Judge Steinman discussed

15  that Rojas testified she could not work and could not walk normally due to constant back pain, and

16  that her leg gives out.  (*Id.*)  Yet, Plaintiff also testified that she was able to clean her house twenty

17  minutes per day, drive her car to the store, shop, and visit her granddaughter.  (*Id.*; *id.* Attach. #2,

18  29-30.)

19        To the extent the ALJ considered Rojas's daily activities because they contradicted her other

20  testimony, this is a proper ground for considering the evidence.  *Orn*, 495 F.3d at  639 (discussing

21  that the first ground for using daily activities to form the basis of an adverse credibility finding is

22  when an ALJ considers the activities because they contradict the claimant's other testimony).  Judge

23  Steinman provided clear and convincing reasons for considering the contradiction between

24  Plaintiff's testimony—that she could not walk normally and her leg gives out—and her daily

25  activities involving cleaning, shopping, driving, and visiting family.  The record substantially

26  supports this contradiction, as Rojas also testified that she went to the park and to the beach with her

27  husband, despite her assertion that she could not walk normally.  (*See* Admin. R. Attach. #2, 28-32,

28  ECF No. 13.)  The ALJ properly considered Rojas's activities in this respect.  *See Webb*, 433 F.3d at

1  686 (noting that substantial evidence is evidence that a reasonable mind might accept as adequate to

2  support the ALJ's conclusion).

3      Yet, to the extent Judge Steinman relied on the daily activities as proof that they are

4  transferable to a work setting, he improperly considered the evidence.  *Id.* (noting that the second

5  ground for using daily activities in an adverse credibility finding is when the claimant can spend a

6  substantial part of the day doing activities that are transferable to a work setting).  An ALJ may

7  consider the claimant's daily activities in this manner when the claimant "is able to spend a

8  substantial part of her day performing household chores or other activities that are transferable to a

9  work setting."  *Smolen*, 80 F.3d at 1284 n.7; *see also Burch*, 400 F.3d at 681.  Many home activities,

10 however, may not be easily transferable to a work environment where it might be impossible to rest

11 periodically or take medication.  *Smolen,* 80 F.3d at 1284 n.7 (citing *Fair*, 885 F.2d at 603)).  In

12 *Vertigan v. Halter*, 260 F.3d 1044  (9th Cir. 2001), the plaintiff shopped for groceries, socialized,

13 walked at the mall, and swam; the court still found her complaints credible because some of these

14 activities were not transferable to a work setting, and she did not engage in them for a substantial

15 part of the day.  *Id.* at 1049-50.

16     Here, Judge Steinman did not attempt to correlate Rojas's daily activities to a particular type

17 of job.  *Burch*, 400 F.3d at 681; *Vertigan,* 260 F.3d at 1050 ("[A]ctivities such as walking in the

18 mall and swimming are not necessarily transferable to the work setting with regard to the impact of

19 pain.").  Moreover, the ALJ did not discuss whether Rojas engaged in these physical activities for a

20 substantial part of the day; in fact, he acknowledged that she only cleaned her house for twenty

21 minutes at a time.  *Vertigan*, 260 F.3d at 1050 ("A patient may do these activities despite pain for

22 therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could

23 engage in similar activity for a longer period given the pain involved."); *Reddick*, 157 F.3d at 722

24 (holding that sporadic activities followed by periods of rest are not inconsistent with subjective

25 complaints of severe pain).  In this respect, the ALJ's reference to Rojas's daily activities was not a

26 proper reason to discredit Plaintiff's subjective pain testimony.  But because the credibility

27 determination is still supported by substantial evidence, the ALJ's assessment will not be disturbed.

28 *Tonapetyan*, 242 F.3d at 1148.

**4.      Symptoms inconsistent with evidence of record**

"[T]he adjudicator may not discredit a claimant's testimony of pain and deny disability benefits *solely* because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell*, 947 F.2d at 346-47 (emphasis added).  Nonetheless, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

In his Cross-Motion for Summary Judgment, Defendant contends that the ALJ appropriately acknowledged that Plaintiff's allegations of disabling pain were inconsistent with the evidence in the record.  (Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 8, ECF No. 17.)  While objective medical evidence is part of the "evidence of record," Defendant maintains, so is Rojas's conflicting testimony about Dr. Sabourin's non-medical observations of Rojas's effort and exaggerations.  (*Id.*)  According to Astrue, the ALJ's credibility determination was consistent with the record, including the opinions of two state agency physicians who reviewed the record and concluded that Rojas lacked credibility.  (*Id.*)  In her Reply, Rojas argues that despite the multiple bases given by the ALJ for his credibility determination, the "gist" of all of them was that her testimony conflicted with the objective medical evidence, which is an improper ground for discrediting her testimony.  (Reply 3, ECF No. 20.)

In this case, ALJ Steinman concluded that Rojas's allegations of disabling pain and limitation were inconsistent with the evidence of record and were therefore not fully credible.  (Admin. R. Attach. #2, 17, ECF No. 13.)  If this was the sole basis for the adverse credibility determination, it would be improper to the extent the ALJ did not give clear and convincing reasons supported by the record.  As discussed, Judge Steinman properly provided other specific, convincing reasons for discrediting Rojas's testimony, such as the inconsistencies in Plaintiff's testimony or between her testimony and her conduct, her exaggerated statements, and conflicts between Rojas's daily activities and testimony.  Where, as here, the ALJ's determination is otherwise supported by substantial evidence, it will not be disturbed even if some of the reasons for discrediting a claimant's testimony were improper.  *See Tonapetyan*, 242 F.3d at 1148.

**5.    Other factors**

In his Cross-Motion, the Defendant alludes to other factors that the ALJ considered when making his credibility finding.  Specifically, the Commissioner argues that the ALJ properly took into account Rojas's self-limiting behaviors, her lack of consistent treatment, and her conservative treatment plan.  (*See* Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 3-5, 7-8, , ECF No. 17.)  Although the ALJ recounted evidence relating to these issues as part of the general record, he did not directly state he was relying on her self-limiting behaviors, lack of consistent treatment, or conservative treatment plan as bases for discrediting Plaintiff's testimony.  *See Chenery Corp.*, 332 U.S. at 196 (noting that a reviewing court must limit its analysis to the grounds invoked by the administrative agency); *Vasquez*, 575 F.3d at 591; *Connett*, 340 F.3d at 874.  The inquiry is whether the reasons articulated by the ALJ in making the credibility determination were clear and supported by substantial evidence, and the Court finds that they were.

## VII.  CONCLUSION

Accordingly, the Court hereby (1) **DENIES** Plaintiff's Motion for Summary Judgment, and (2) **GRANTS** Defendant's Cross-Motion for Summary Judgment.  This Order concludes the litigation in this matter.  The Clerk shall close the file.

**IT IS SO ORDERED.**


DATED:  March 19, 2012

_____
Honorable Janis L. Sammartino
United States District Judge

24

10cv02461 JLS(RBB)